UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
MOHAMMED QUADIR,

                                                               16-Civ-7476 (JPO)

                              Plaintiff,

             -against-

NEW YORK STATE DEPARTMENT OF LABOR,

                              Defendant.
-------------------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF STATE DEFENDANT'S MOTION TO DISMISS THE COMPLAINT


                                        ERIC T. SCHNEIDERMAN
                                        Attorney General of the
                                        State of New York
                                        <u>Attorney for State Defendant</u>
                                        120 Broadway, 24th Floor
                                        New York, New York 10271
                                        (212) 416-8552


MICHAEL J. SIUDZINSKI
Assistant Attorney General
      <u>of Counsel</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

Preliminary Statement .................................................................................................... 1

Statement of the Facts ................................................................................................... 1

Background ..................................................................................................................... 2

    A. Plaintiff's Employment with the Department of Labor ....................................... 2

    B. Plaintiff's First Federal Action before the Court ................................................ 4

    C. Plaintiff's Civil Service Section 72 Hearing and Involuntary Leave of Absence .............. 6

    D. Plaintiff's Current Federal Action ....................................................................... 7

ARGUMENT .................................................................................................................... 8

POINT I       Plaintiff's Claims Are Barred by Eleventh Amendment Sovereign Immunity ....... 8

POINT II     Plaintiff's Claims Are Barred by Collateral Estoppel ......................................... 10

    A. The Court's Findings in its June 29, 2016 Opinion and Order Are Preclusive of Plaintiff's Claims ................................................................................ 11

    B. Plaintiff's Claims Are Precluded by the Hearing Officer's Findings in the CSL § 72 Hearing .................................................................................... 13

POINT III    Plaintiff Fails to State a Cause of Action .......................................................... 15

    A. Plaintiff's Failure to Accommodate Claim Should be Dismissed .................... 15
    B. Plaintiff has Failed to Plead a Disability Discrimination Claim ...................... 16
    C. Plaintiff has Failed to Plead a Retaliation Claim ............................................. 19

CONCLUSION ................................................................................................................ 21

# TABLE OF AUTHORITIES

CASES                                                                                Page(s)

Altieri v. Albany Pub. Library,
   172 Fed. App'x 331 (2d Cir. 2006)............................................................................21

Ashcroft v. Iqbal,
   556 U.S. 662 (2009).................................................................................................15

Bd. of Tr. of Univ. of Alabama v. Garrett,
   531 U.S. 356 (2001)...................................................................................................9

Belton v. City of New York,
   2014 WL 4798919 (S.D.N.Y. Sep. 26, 2014), aff'd Belton v. City of New
   York, 629 Fed. App'x. 50 (2d Cir. 2015) ................................................................19

Bowles v. New York City Transit Authority,
   2006 WL 1418602 (S.D.N.Y. May 23, 2006) .......................................................20

Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt,
   701 F. Supp. 2d 340 (E.D.N.Y. 2010) ...................................................................10

Castro-Medina v. Proctor & Gamble Commercial Co.,
   565 F. Supp. 2d 343 (D.P.R. 2008).........................................................................18

Cercpac v. Health & Hosps. Corp.
   147 F.3d 165 (2d Cir. 1998).....................................................................................16

Chambers v. Time Warner, Inc.,
   282 F.3d 147 (2d Cir. 2002)......................................................................................2

Chinn v. City Univ. of N.Y. Sch. of Law,
   963 F. Supp. 218 (E.D.N.Y. 1997) .........................................................................10

Collins v. N.Y. City Transit Auth.,
   305 F.3d 113 (2d Cir. 2002).....................................................................................14

Davis v. Bowes,
   1997 WL 655953 (S.D.N.Y. Oct. 20 1997) ...........................................................17

Effie Film, LLC v. Pomerance,
   909 F. Supp. 2d 273 (S.D.N.Y. 2012) (Oetken, J.)..................................................2

Federated Department Stores v. Moitie,
   452 U.S. 394 (1981).................................................................................................12

Galabya v. N.Y.C. Bd. of Educ.,
   202 F.3d 636 (2d Cir. 2000)...............................................................................18

Giordano v. City of New York,
   274 F.3d 740 (2d Cir. 2001)...............................................................................17

Goonan v. Federal Reserve Bank of New York,
   916 F. Supp. 2d 470 (S.D.N.Y. 2013)(Oetken, J.)..............................................16

Gordon v. New York City Bd. of Educ.,
   232 F.3d 111 (2d Cir. 2000)...............................................................................21

Guice-Mills v. Derwinski,
   772 F.Supp. 188 (S.D.N.Y. 1991) aff'd 967 F.2d 794 (2d Cir. 1992)...................18

In re Hyman,
   502 F.3d 61 (2d Cir. 2007).................................................................................11

Lyons v. Legal Aid Soc.,
   68 F.3d 1512 (2d Cir. 1995)...............................................................................16

Makarova v. United States,
   201 F.3d 110 (2d Cir. 2000).................................................................................9

McCoy v. State,
   16 Misc. 3d 1128(A), (Ct. Cl. 2007)....................................................................21

McGinty v. State of N.Y.,
   251 F.3d 84 (2d Cir. 2001)...................................................................................9

Montanile v. National Broadcase Co.,
   211 F. Supp. 2d 481 (S.D.N.Y. 2002), aff'd, 57 F. App'x 27 (2d Cir. 2003).........18

O'Toole v. Ulster County,
   2014 WL 4900776 (N.D.N.Y. Sep. 30, 2014) .....................................................19

Page v. Liberty Cent. School Dist.,
   679 F. Supp. 2d 448 (S.D.N.Y. 2010)..................................................................14

Pennhurst State School & Hospital v. Halderman,
   465 U.S. 89 (1984)...............................................................................................9

Quadir v. N.Y. State Dep't of Labor,
   39 F. Supp. 3d 528 (S.D.N.Y. 2014).....................................................................9

Quadir v. NYS Dept. of Labor,
   13-cv-3327(JPO).............................................................................................2, 10

Quadir v. NYS Dept. of Labor,
  2016 WL 3633406 (S.D.N.Y. Jun. 29, 2016) ............................................................... passim

Sarnov v. Douglas Elliman-Gibbons and Ives, Inc.,
  183 F.3d 155 (2d Cir. 1999).......................................................................................19

Sassower v. Abrams,
  833 F. Supp. 253 (S.D.N.Y. 1993) .............................................................................10

Scalera v. Eletrograph Systems, Inc.,
  848 F.Supp.2d 352 (E.D.N.Y. 2012) ..........................................................................16

Sweeney v. W.,
  149 F.3d 550 (7th Cir. 1998) ......................................................................................18

Tepperwein v. Entergy Nuclear Operations, Inc.,
  663 F.3d 556 (2d Cir. 2011).......................................................................................20

Ulrich v. Moody's Corp.,
  2014 WL 4977562 (S.D.N.Y. Sep. 30, 2014).............................................................20

Weeks v. N.Y.S. Div. of Parole,
  273 F.3d 76 (2d Cir. 2001)..........................................................................................20

## CONSTITUTIONAL PROVISIONS

United States Constitution Eleventh Amendment ...........................................1, 8, 9, 10

## FEDERAL STATUTES

29 U.S.C.
  § 794(a) ......................................................................................................................16

Federal Americans with Disabilities Act of 1990 (ADA), 42 U.S.C.
  § 12101 et seq. ....................................................................................................... passim

Rehabilitation Act of 1973, 29 U.S.C.
  § 791 et seq. ............................................................................................................ passim

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(1)...................................................................................................1

Fed. R. Civ. P. 12(b)(6)............................................................................................1, 15

**STATE STATUTES**

State Civil Service Law (CSL)
    § 72................................................................................................................... passim
    § 72.2 and 72.3 ..............................................................................................................7
    § 72(5) ............................................................................................................................4

State Human Rights Law (SHRL), New York Executive Law
    Article 15, § 290 et seq. ................................................................................. passim
    § 297(9) ..........................................................................................................................9

## Preliminary Statement

Plaintiff pro se, Mohammed Quadir, brings this action for monetary damages and a reasonable accommodation against the New York State Department of Labor ("DOL" or "State Defendant").   Plaintiff, a former employee of DOL, alleges employment discrimination based on his disability under the federal Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA"), the New York State Human Rights Law, New York Executive Law, Article 15, § 290 et seq. ("SHRL"), and the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq. ("RA").

This memorandum of law is respectfully submitted on behalf of the State Defendant in support of its motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.   The motion to dismiss should be granted upon the grounds that the Court lacks subject matter jurisdiction because the Eleventh Amendment bars plaintiff's ADA and SHRL claims, plaintiff's RA claims are barred by collateral estoppel, and the complaint fails to state a claim upon which relief can be granted.

## Statement of the Facts

For purposes of a motion to dismiss only the well-pleaded facts of the complaint should be considered.   Here, however, plaintiff has not provided a written complaint, but rather has submitted the District Court's "Complaint for Employment Discrimination" form and approximately 139 pages of documents attached thereto, comprised of four administrative complaints.[1]   The Court may also take judicial notice of the documents attached to the Declaration of Michael J. Siudzinski ("Siudzinski Decl."), dated February 9, 2017; those from

---

[1] For convenience, this motion will use plaintiff's pagination when referring to the complaint, e.g. "SDNY 1-139," however the documents related to plaintiff's four administrative complaints can be found on this action's docket at: (1) Doc. 2, p. 5-43, cont. Doc.2-1, p1-11; (2) Doc.2-1, p. 12-20; (3) Doc.2-1, p.21-38, cont. Doc.2-2, p.1-39; and (4) Doc.2-2, p.40-43, cont. Doc.2-3, p.1-19.

1

plaintiff's first federal action before the Court, <u>Quadir v. NYS Dept. of Labor</u>, 13-cv-3327(JPO); those which are incorporated in the complaint by reference; documents in plaintiff's possession; and documents of which plaintiff had knowledge and upon which plaintiff relied upon in bringing this action.  <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002); <u>see also</u> <u>Effie Film, LLC v. Pomerance</u>, 909 F. Supp. 2d 273, 290 (S.D.N.Y. 2012) (Oetken, J.).

**<u>Background</u>**

### A.  Plaintiff's Employment with the Department of Labor

Plaintiff was employed as a Labor Services Representative ("LSR") assigned to the Bronx Career Center operated by DOL.  <u>See</u> <u>Quadir v. NYS Dept. of Labor</u>, 2016 WL 3633406, at *1 (S.D.N.Y. Jun. 29, 2016).  He was hired as an LSR trainee in April 2008, and became an LSR after a two-year probationary period.  LSRs provide employment services to job seekers, individually or in group settings.

On February 2, 2011 plaintiff, for the first time, requested a reasonable accommodation on the basis that he was suffering from lightheadedness, fatigue, and other symptoms.  <u>See</u> <u>id.</u> Specifically, plaintiff requested that he be excused from teaching workshops and other job duties that required prolonged standing while he sought a diagnosis.  <u>See</u> <u>id.</u>  Plaintiff's supervisor granted plaintiff's initial request for a limited period of time.  <u>See</u> <u>id.</u>  Throughout 2011 plaintiff continued to request extensions of his reasonable accommodation, which were all granted by DOL's Division of Equal Opportunity Development ("DEOD") until February 14, 2012.  <u>See</u> <u>id.</u> At that time, DOL denied plaintiff's request for an extension of his accommodation, but offered plaintiff a different reasonable accommodation (*i.e.* use of a high chair and lectern) designed to address plaintiff's need to avoid prolonged standing duties.  <u>See</u> <u>id.</u>  After plaintiff's February 2,

2011 request for a reasonable accommodation DOL never required plaintiff to teach a workshop again even though his request was eventually denied on February 14, 2012.  See id.

Thereafter, plaintiff's time and attendance dramatically worsened.  Between April 15, 2013 and April 11, 2014, plaintiff was absent ninety-two (92) days and tardy 145 days.  See id. at *7.  Plaintiff was the only employee at the Bronx Career Center to exhaust his accrued leave. See id.  On or about April 22, 2014, DOL placed plaintiff on "full restrictions," thereby requiring plaintiff to provide supporting documentation for all unplanned absences.  See id.  Between June 6 and August 20, 2014, DOL issued seven counseling memos to plaintiff concerning his poor time and attendance, insubordination, and excessive use of emails.  See "SDNY 5."

According to plaintiff, on November 12, 2014 plaintiff attempted to make a request for a reasonable accommodation directly to the Director of the Bronx Career Center, Atul Sheffey. See "SDNY 67."  Specifically, plaintiff alleges that he requested an alternate work schedule which would allow him to arrive late every day by about 30-45 minutes.  See id.  Mr. Sheffey verbally denied plaintiff's request and followed up the next day with an email outlining why plaintiff's request was being denied.  See "SDNY 46, 67."  Plaintiff does not allege that he ever made his request to DEOD, the body responsible for handling DOL employee requests for reasonable accommodations.  On November 19, 2014, December 31, 2014, and January 29, 2015, DOL issued plaintiff three additional counseling memos concerning his insubordination and poor work performance.  See "SDNY 58-59."

In April 2015, plaintiff received his annual performance evaluation in which his work performance was rated as unsatisfactory.  See "SDNY 59."  On June 12, 2015, DOL issued a Notice of Discipline to plaintiff charging plaintiff with "misconduct and/or incompetence" based on plaintiff being absent from work without authorization for 119 days during the period of

3

November 4, 2014 to May 28, 2015.  See "59"; Siudzinski Decl., Ex. A.  The Notice proposed an

eight-week suspension without pay unless formally grieved by plaintiff.  See id.  On June 23

2015, plaintiff formally challenged the Notice.  See Siudzinski Decl., Ex. B.  On information and

belief, plaintiff was never place on the proposed eight-week suspension because the matter was

held in abeyance pending plaintiff's medical evaluation pursuant to New York State Civil

Service Law ("CSL") § 72 and the subsequent appeal hearing and determination.

 Between June 8 and November 6, 2015, plaintiff initiated four new administrative

complaints, two with the DHR and two with the EEOC.  See, infra, Background, Section D.

These four complaints comprise the basis of plaintiff's claims in this action.  On October 7,

2015, plaintiff was placed on involuntary leave pursuant to CSL § 72(5).  See, infra,

Background, Section C.

**B.  Plaintiff's First Federal Action before the Court**

 In May 2012, plaintiff filed a complaint with the New York State Division of Human

Rights ("DHR"), challenging DOL's February 14, 2012 determination that plaintiff could be

reasonably accommodated with the use of a high chair and lectern.  See Quadir, 2016 WL

3633406, at *1.  In December 2012, the DHR dismissed plaintiff's complaint, finding that

DOL's offer of the use of chair and lectern was reasonable.  Plaintiff then filed a complaint with

the Equal Employment Opportunity Commission ("EEOC"), which adopted the DHR's findings.

 On May 16, 2013, after plaintiff's first DHR and EEOC complaints were dismissed, Mr.

Quadir, acting *pro se*, initiated his first federal action against DOL by filing a complaint with the

court.  On May 31, 2013 plaintiff amended his complaint for the first time.[2]  See id. at *2.

---

[2] Plaintiff continued to supplement his complaint, and the Court, by Orders dated May 23 and June 17, 2014, limited

Plaintiff alleged claims pursuant to the ADA and the SHRL alleging that DOL had denied his request for a reasonable accommodation, discriminated against, and then retaliated against him on nine separate occasions.  See id.  DOL moved to dismiss, and by Opinion and Order dated August 19, 2014, the Court (Oetken, J.) dismissed plaintiff's ADA and SHRL claims, but construed plaintiff's claims under the RA, allowing plaintiff's action to survive.  See id.

Thereafter, plaintiff hired counsel to represent him, DOL answered the June 3, 2014 consolidated complaint, and discovery was conducted and completed.  See id.  DOL moved for summary judgment, which plaintiff opposed.  See id.  By Order, dated June 29, 2016, the Court (Oetken, J.) granted DOL's motion, dismissing plaintiff's failure to accommodate claims on the grounds that plaintiff failed to demonstrate that he was entitled to a reasonable accommodation different from what DOL offered him.  See id. at *4.  The Court further found that plaintiff neither suffered an adverse action nor did DOL retaliate against him.  See id. at *5-7.  Specifically, the Court found that DOL (a) did not commit any of any alleged acts which deterred plaintiff from pursuing his administrative complaints against the agency; (b) had a legitimate interest in requiring plaintiff to present medical documentation in support of his absences; (c) counseled plaintiff on his excessive absences and tardiness well before his initial request for an accommodation; (d) had established that its operational needs required his presence; (e) and that plaintiff failed to offer any evidence that DOL's reasons were pretextual. See id. at *4-7.

---

plaintiff's first action and supplemental pleadings to events occurring on or before May 30, 2014 and granted him permission to file a new federal action at a later date if necessary.  On June 3, 2014, plaintiff filed a consolidated pleading.

**C.  Plaintiff's Civil Service Section 72 Hearing and Involuntary Leave of Absence**

On May 29, 2015, Noemi Ramos, plaintiff's direct supervisor, sent an email to Mr. Sheffey, outlining her numerous complaints about plaintiff's work performance, insubordination, excessive absences and tardiness, as well as what she believed as his lack of communication and respect towards DOL supervisors and employees.  See Siudzinski Decl., Ex. C, April 11, 2016 Decision, NYS Civil Service § 72 Hearing, p. 3-4.  DOL's Personnel Department investigated the matter and determined it would be appropriate to send plaintiff for a medical examination pursuant to CSL § 72.  See id., p. 4-5.

On September 9, 2015, plaintiff was examined by Dr. Arthur Kurtz, a physician with the New York State Employee Health Service ("EHS"), and examined again on September 21, 2015 by Dr. John Wapner, a psychologist.  See id., p. 5.  Although Dr. Kurtz found plaintiff physically capable of performing his job duties, Dr. Wapner found that plaintiff was mentally unfit to perform his job duties at that time.  See id., p. 5; "SDNY 125."  By letter dated October 7, 2015, DOL advised plaintiff that the EHS medical examinations determined he was not able to perform the duties of his position and that he was being placed on an involuntary leave of absence, which began on or about October 27, 2015.  See id., p. 6; "SDNY 123-24."  According to the letter and pursuant to CSL § 72, plaintiff was eligible to use his available leave credit or sick leave at half pay for up to one year.  See "SDNY 123-24."  Plaintiff was also informed of his right to appeal the leave of absence with a hearing conducted by an independent hearing officer.  See id.

Plaintiff formally appealed DOL's decision to place him on involuntary leave.  A hearing was conducted on December 9, 2015 and January 20, 2015, and both parties were represented, called and examined witnesses, and submitted evidence.  See Siudzinski Decl., Ex. C, p. 1-2.  The issues were agreed by stipulation and were as follows:

6

1.  Was there a reasonable basis for [DOL's] decision to send [plaintiff] to a medical evaluation pursuant to [CSL] § 72?

2.  Did [DOL] have probable cause to believe that the continued presence of [plaintiff] on the job would severely interfere with the operations requiring that he be immediately placed on involuntary leave of absence pursuant to [CSL] § 72.5?

See id., p. 1.  By decision, dated April 11, 2016, the hearing officer found that DOL had (a) a reasonable basis to send plaintiff for medical evaluation and (b) a probable cause to believe that plaintiff's presence at work would severely interfere with operations.  See id., p. 12-16.  The hearing officer recommended that plaintiff "remain on an involuntary leave of absence until such time as he is determined psychologically fit to perform the essential duties of his position by an EHS Medical Professional."[3]  See id., p. 17.

## D.  Plaintiff's Current Federal Action

Plaintiff's complaint in this action consists of a completed copy of the Court's "Complaint for Employment Discrimination" with approximately 139 pages attached thereto.  According to the completed complaint form, plaintiff's claims are made pursuant to the ADA, the SHRL, and the RA, pertaining to four separate administrative complaints filed by plaintiff to with the DHR and the EEOC.  See "SDNY 1-139."  However, neither the DHR nor the EEOC has issued a final determination for any of the aforementioned administrative complaints because, in part, plaintiff withdrew the complaints.  See "SDNY 1, 60."

Plaintiff has attached copies of the four administrative complaints and some of the related documents to his federal complaint at issue here, divided as follows: (1) June 8, 2015 Complaint to the DHR, alleging that seven separate disciplinary write-ups between the dates of June 6 and

---

[3] The provisions for requesting reinstatement and appeal rights can be found at CSL § 72.2 and 72.3 respectively.

August 20, 2014 were acts of discrimination, (see "SDNY 1-50"); (2) September 14, 2015 Complaint to the EEOC, alleging that DOL denied his reasonable accommodation request made on November 12, 2014, that three additional disciplinary write-ups between November 19, 2014 and January 29, 2015 were acts of discrimination, he was forced to move his desk, he received a negative performance evaluation, he was suspended for eight weeks without pay, and he was forced to submit to two medical examinations to determine his fitness to work (see "SDNY 51-59"); (3) September 16, 2015 Complaint to the DHR, repeating his allegation that DOL denied his reasonable accommodation request on November 12, 2014 and that his DOL supervisors retaliated against him (unspecified) for complaining about discrimination and retaliation (see "SDNY 60-116"); and (4) November 6, 2015 Complaint to the EEOC, repeating his allegations that he was forced to submit to two medical evaluations in September 2015, pursuant to CSL § 72, and then placed on an involuntary leave of absence after he was found unfit to work (see "SDNY 117-39").

## ARGUMENT

### POINT I

### Plaintiff's Claims Are Barred by Eleventh Amendment Sovereign Immunity

This Court lacks subject matter jurisdiction over plaintiff's ADA and SHRL claims for monetary damages against the State Defendant because such claims are barred by sovereign immunity pursuant to the Eleventh Amendment of the United States Constitution.  See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 99-100 (1984) (In absence of consent, a suit in which the state or one of its agencies is named as the defendant is proscribed by the Eleventh Amendment).  This bar "extends immunity not only to a state, but also to entities considered 'arms' of the state."  McGinty v. State of N.Y., 251 F.3d 84, 95 (2d Cir. 2001) (internal

quotations omitted).  It is indisputable that DOL is immune from suit under the Eleventh

Amendment.  See Quadir v. N.Y. State Dep't of Labor, 39 F. Supp. 3d 528, 537 (S.D.N.Y. 2014);

(holding that DOL is an agency of the State entitled to Eleventh Amendment sovereign

immunity).

The State Defendant is entitled to assert the State's Eleventh Amendment immunity

against all claims for monetary relief absent an unequivocal waiver or abrogation thereof.  See,

Bd. of Tr. of Univ. of Alabama v. Garrett, 531 U.S. 356, 363 (2001).  The Supreme Court has

held that the ADA does not abrogate the States' Eleventh Amendment immunity.  Id. at 374.

State agencies may not be sued in federal court unless they have waived their immunity and

consented to suit in federal court.  See Makarova v. United States, 201 F.3d 110, 113 (2d Cir.

2000) (In absence of consent, a suit in which the state or one of its agencies or departments is

named as a defendant is proscribed by the Eleventh Amendment) (citations omitted).  The DOL

has not waived its immunity nor consented to suit.  Accordingly, plaintiff's ADA claims cannot

be brought in federal court because the State Defendant has sovereign immunity from suit.

The State Defendant's immunity from suit in federal court extends to plaintiff's state law

claim for disability discrimination under the SHRL.  See Quadir, 39 F. Supp. 3d at 537.  "Courts

in this circuit have ruled that the general consent to suit provision of New York Executive Law

§297(9) which provides for 'a cause of action in any court of appropriate jurisdiction' against the

state for discrimination, does not waive New York State's Eleventh Amendment immunity from

suit in federal court." Chinn v. City Univ. of N.Y. Sch. of Law, 963 F. Supp. 218, 226-27

(E.D.N.Y. 1997) (citations omitted).

Accordingly, plaintiff's ADA and SHRL claims must be dismissed for lack of subject

matter jurisdiction.

9

# POINT II

## Plaintiff's Claims Are Barred by Collateral Estoppel

Plaintiff's complaint, including his RA claims, should be dismissed in its entirety because he had a full and fair opportunity to litigate the basis of his claims in the first federal action and in his fitness hearing, conducted pursuant to CSL § 72.[4]  The doctrine of collateral estoppel bars re-litigation of issues previously litigated to a final adjudication and in which a party had a full and fair opportunity to litigate the matter.  See Sassower v. Abrams, 833 F. Supp. 253, 264 (S.D.N.Y. 1993); Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, 701 F. Supp. 2d 340, 349-353 (E.D.N.Y. 2010).  Here, plaintiff alleges that DOL has discriminated and retaliated against him by: (1) issuing him ten disciplinary write-ups; (2) requiring him to move to a different desk location; (3) issuing a negative performance evaluation; (4) denying a request for a reasonable accommodation in the form of an altered work schedule; (5) threatening to suspend him without pay for eight weeks; (6) requiring him to submit to two medical examinations; and (7) placing him on an involuntary leave of absence because he is unfit to perform his duties.  Plaintiff's claims, although tangentially based on actions after May 30, 2014, are a continuation of the same set of circumstances concerning plaintiff's failure to provide medical documentation in support of his disability and his excessive absences and tardiness.  This Court and an independent hearing officer have both determined that plaintiff's allegations of discrimination are unfounded and that DOL has acted reasonably in light thereof.

---

[4] The Court, by its May 23 and June 17, 2014 Orders in Quadir, 13-cv-3327, Doc. 34 and 37 respectively, limited plaintiff's first action and supplemental pleadings to events occurring on or before May 30, 2014 and granted him permission to file a new federal action at a later date if necessary.  The Court's decision on DOL's motion for summary judgment, however, found inter alia that DOL's disciplinary actions and requirement that plaintiff provide supporting documentation for his excessive absences were for legitimate, non-discriminatory reasons.  See Quadir, 2016 WL 3633406, at *4-7.

**A.      The Court's Findings in its June 29, 2016 Opinion and Order Are Preclusive of Plaintiff's Claims**

The issues of whether plaintiff could make out prima facie claims of discrimination and retaliation and whether DOL had a legitimate, non-discriminatory reasons for its actions were decided by this Court in plaintiff's first federal action.  Under New York law, collateral estoppel applies where: "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from re-litigating the issue had a full and fair opportunity to litigate the issue in the prior action."  In re Hyman, 502 F.3d 61, 65 (2d Cir. 2007).  In plaintiff's first federal action he alleged that DOL failed to provide him with a reasonable accommodation, discriminated against him due to his disability, and retaliated against him for exercising his rights.  See Quadir, 2016 WL 3633406, at *1.  The Court found: (1) DOL had legitimate, non-discriminatory reasons for denying plaintiff's request for a modified work scheduled; (2) DOL was entitled to require plaintiff to verify his request with supporting medical documentation; and (3) plaintiff had failed to identify any actions by DOL employees that were discriminatory or retaliatory.[5]  See id. at *4-7.

First, this Court has already ruled that plaintiff's disciplinary write-ups, negative performance evaluations, and other immaterial actions by DOL (e.g. moving his desk location) are not adverse actions for purposes of either discrimination or retaliation claims.  See id. at *5-7; see also Section III, infra.  Second, the Court found that DOL was not obligated to provide plaintiff with an altered work schedule because it's "operational needs required his presence."

---

[5] To the extent plaintiff is attempting to revive or reassert those claims made in his first federal action, such claims, and any others based on defendant's actions prior to May 30, 2014, are barred by res judicata.  Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from re-litigating [claims] that were or could have been raised in that action, not just those that were actually litigated."  Federated Department Stores v. Moitie, 452 U.S. 394, 398 (1981).

See Quadir, 2016 WL 3633406, at *7.  Third, the Court found that plaintiff's claims of retaliation should be denied because plaintiff clearly has not been deterred from making complaints.  "[T]he record reflects that Quadir continued to object to the conditions of his employment and assert his right to reasonable accommodations throughout the period in question."  Id.  Since the commencement of his first action, he has made four new complaints, two to the DHR and two to the EEOC, he has formally challenged the proposed eight-week suspension, and he has formally appealed his involuntary leave of absence to an independent hearing officer.  See Complaint, "SDNY 1, 51, 59, and 117."  Clearly, no deterrence exists.  Fourth, the Court found that DOL counseled plaintiff on his time and attendance problems prior to his initial request for an accommodation, "significantly undercutting his contention that he was subject to retaliation."  Id.

Fifth, the Court found that plaintiff had not offered evidence that DOL's actions were pretextual and that DOL has a legitimate, non-discriminatory reason for its actions, namely that DOL required all employees to attend work regularly and on-time.  Id.  Accordingly, the Court found that requiring plaintiff to provide medical documentation to support his requests for reasonable accommodations and for his excessive absences furthered its legitimate goals, "especially given his attendance record."  Id.

Although plaintiff has commenced a new action, the same matters are at issue here. Plaintiff's claims concerning DOL's actions are all due to his excessive absences and tardiness as well as his lack of medical documentation to support his alleged disability.  For example, DOL's referral plaintiff to submit to the two medical exams in September 2015 was requested to verify his disability to determine whether he was fit to work or what, if any, actions DOL needed to take to accommodate him, and was not intended to or resulted in an effort to harass or discriminate against him.  Consequently, an examining EHS physician, not DOL, determined

12

that plaintiff was psychologically unfit to perform his job duties and he was placed on an involuntary leave of absence from work on or about October 7, 2015.  See "SDNY 125." Similarly, the June 12, 2015 Notice of Discipline was issued to plaintiff in response to his time and attendance problems.  See "SDNY 59"; Siudzinski Decl., Ex. A.

## B.   Plaintiff's Claims Are Precluded by the Hearing Officer's Findings in the CSL § 72 Hearing

Plaintiff's claims here are also precluded by the hearing officer's findings because plaintiff had a full and fair opportunity to opportunity to challenge DOL's actions by submitting evidence and calling witnesses to testify on his behalf.  The questions at issue in the hearing were whether DOL acted reasonably by having plaintiff submit to the EHS medical examinations and whether DOL acted reasonably by placing him on involuntary leave.  See Siudzinski Decl., Ex. C, p. 1.  The hearing officer found that DOL acted reasonably in both actions.[6]  See id., p. 12-16.

First, the hearing officer found, based on testimony and evidentiary documents, that plaintiff was in fact excessively absent and tardy – 237 days out of 245 between April 15, 2013 and April 11, 2014 – which required that he use more than 536 hours of unpaid leave time to cover.  See id., p. 13-14.  The hearing office further found that it would not be reasonable to grant plaintiff an accommodation to regularly come in late because it would "effectively eviscerate DOL's attendance policy and make it virtually impossible to schedule customers to be seen by [plaintiff]."  See id., p. 14.  Accordingly, the hearing officer found that it was reasonable for DOL to send plaintiff for a medical examination to determine if he was fit for work.  See id., p. 14-15.  Second, the hearing officer found sufficient evidence that DOL acted reasonably by

---

[6] CSL § 72 has a remedial purpose: to afford tenured civil servant employees with procedural protections prior to involuntary separation from service.  See Matter of Sheeran v New York State Dept. of Transp., 18 N.Y.3d 61, 65-66 (N.Y. 2011).

placing plaintiff on involuntary leave immediately after the EHS doctors determined that plaintiff was unfit to work.  See id., p. 16.  Specifically, the hearing officer found that, "[DOL] had probable cause to believe that the continued presence of [plaintiff] on the job would severely interfere with operations."  See id.

Administrative hearings may collaterally estop a plaintiff from arguing that the essential elements of a disability claim.  See Page v. Liberty Cent. School Dist., 679 F. Supp. 2d 448, 453 (S.D.N.Y. 2010).  The Second Circuit has ruled that independent and neutral arbitrator findings, based on substantial evidence, are "highly probative of the absence of discriminatory intent" in an employment discrimination and retaliation action.  See Collins v. N.Y. City Transit Auth., 305 F.3d 113, 119 (2d Cir. 2002).  Plaintiff cannot offer any evidence that his hearing before an arbitrator was biased and therefore plaintiff's claims should be precluded by the hearing officer's findings.

Plaintiff had a full and fair opportunity to litigate and support his claims in his first action and the § 72 hearing.  It was plaintiff's burden to provide evidence that DOL's actions, both in requiring medical documentation to support his requests for reasonable accommodations and in requiring plaintiff be at work on time and to not be excessively absent, were pretextual rather than legitimate, non-discriminatory actions in furtherance of its goals.  Plaintiff failed to meet his burden and the Court ruled found that DOL had offered legitimate, non-discriminatory reasons for its actions and therefore it had not discriminated nor retaliated against him.  See Quadir, 2016 WL 3633406, at *4-7.  The hearing officer further found that plaintiff's medical examinations and placement on involuntary leave were reasonable and appropriate given plaintiff's disability and problems with excessive absences and tardiness.  The nexus of events surrounding plaintiff's new claims are identical to and are a continuation from his first federal action.  Accordingly,

14

plaintiff should be barred from re-litigating the same issues here.

## POINT III

### Plaintiff Fails to State a Cause of Action

Plaintiff's complaint should also be dismissed because he fails to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 [2007]).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s] devoid of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

**A.       Plaintiff's Failure to Accommodate Claim Should be Dismissed**

Discrimination, pursuant to the RA, may occur if the employer does "not [make] reasonable accommodations to the known physical or mental limitations of an otherwise qualified . . . employee."[7] 29 U.S.C. § 794(a); see also Goonan v. Federal Reserve Bank of New York, 916 F. Supp. 2d 470, 479 (S.D.N.Y. 2013)(Oetken, J.) ("'In so-called reasonable-accommodation cases . . . the plaintiff's burden [of establishing a prima facie case] requires a showing that (1) plaintiff is a person with a disability under the meaning of the [RA]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has

---

[7] Claims made pursuant to the RA are analyzed under the same standards as the ADA.  See Cercpac v. Health & Hosps. Corp. 147 F.3d 165, 167 (2d Cir. 1998).

refused to make such accommodations.'") (quoting <u>Graves v. Finch Pruyn & Co.</u>, 457 F.3d 181, 183–84 [2d Cir. 2006]).

Plaintiff alleges that he made a new request for a reasonable accommodation to Mr. Sheffey on November 12, 2014, in the form of an altered work scheduled, or more specifically, being allowed to arrive late to work without consequence.  <u>See</u> "SDNY 55, 67."  Plaintiff alleges that Mr. Sheffey denied the request by email, dated November 13, 2014, because DOL had placed him on time and attendance restrictions, requiring him to provide medical documentation for all absences.  <u>See</u> "SDNY 55, 58."  Plaintiff does not allege that he provided new medical documentation to support this request, nor does he allege that he formally made his request to DEOD, the division of DOL that reviewed and decided plaintiff's requests at issue in his first federal action.  To date, plaintiff has failed to provide DOL with medical documentation that he requires an accommodation other than to be excused from prolonged standing and activities that involving considerable physical exertion.  <u>See</u> <u>Quadir</u>, 2016 WL 3633406, at *4.  Furthermore, courts of this Circuit have found that an essential function of a job is to regularly appear at work and on time.  <u>See</u> <u>Lyons v. Legal Aid Soc.</u>, 68 F.3d 1512, 1516 (2d Cir. 1995); <u>Scalera v. Eletrograph Systems, Inc.</u>, 848 F.Supp.2d 352, 363-64 (E.D.N.Y. 2012).  Plaintiff's failure to accommodate claim, based on Mr. Sheffey's refusal to allow him to show up for work tardy, should be dismissed because DOL was not required to provide an accommodation that would negate an essential function of his job.

**B.**    **Plaintiff has Failed to Plead a Disability Discrimination Claim**

To plead a prima facie disability discrimination in employment claim, a plaintiff must allege that: "'(1) his employer is subject to the [RA]; (2) he was disabled within the meaning of the [RA]; (3) he was otherwise qualified to perform the essential functions of his job, with or

without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.'" Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001) (citation omitted). Here, plaintiff alleges that DOL has discriminated and retaliated against him by: (1) issuing him at least ten disciplinary write-ups; (2) requiring him to move to a different desk location; (3) issuing a negative performance evaluation; (4) suspending him without pay for eight weeks; (5) requiring him to submit to two medical examinations; and (6) suspending him from work on a finding that he is unfit to perform his duties.[8]  Plaintiff is neither "otherwise qualified" nor has he suffered an adverse action due to his disability.

Plaintiff alleges that he is disabled with a diagnosis of major depressive disorder and takes medications that make him drowsy. See "SDNY 55, 65, 67, 69, 121."  Plaintiff is not "otherwise qualified" to perform the essential functions of his job.  This Court has previously determined that an individual who is incapable of reporting to work on time cannot perform an essential function of their job and is therefore not "otherwise qualified."  See Davis v. Bowes, 1997 WL 655953, at *16 (S.D.N.Y. Oct. 20 1997).  More specifically, this Court has determined that an employee unable to report to work due to depression and the side effects of sedating medication is not "otherwise qualified."  See Guice-Mills v. Derwinski, 772 F.Supp. 188, 199 (S.D.N.Y. 1991) aff'd 967 F.2d 794 (2d Cir. 1992).  Additionally, the hearing officer found that plaintiff was incapable of performing his job, with or without an accommodation.  See Siudzinski Decl., Ex. C., p. 14. Plaintiff's claim for disability discrimination must fail because by his own admission he is not otherwise qualified to perform his job duties with DOL.

Assuming, arguendo, that plaintiff was "otherwise qualified," his disciplinary write-ups,

---

[8] Plaintiff does not differentiate between DOL's alleged discriminatory and retaliatory actions.

negative performance evaluation, and requirement that he move to a different desk are not materially adverse.  To rise to the level of an "adverse employment action," a change in working conditions must be "'materially adverse'" — that is, "'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (citations omitted).  Courts have held that "negative performance evaluations, standing alone, cannot constitute an adverse employment action."  Sweeney v. W., 149 F.3d 550, 556 (7th Cir. 1998); see also Castro-Medina v. Proctor & Gamble Commercial Co., 565 F. Supp. 2d 343, 372 (D.P.R. 2008) ("[T]his Court is unable to find that Plaintiff's negative performance evaluation and warnings constitute adverse employment actions.  Plaintiff offered no proof that she was materially disadvantaged with respect to her salary, grade or other objective terms and conditions of employment . . . .").  Furthermore, plaintiff's reassignment to a new desk, without a change to his duties, salary, or benefits, is not a change in the terms and conditions of his employment and therefore is not materially adverse.  See Montanile v. National Broadcase Co., 211 F. Supp. 2d 481, 486 (S.D.N.Y. 2002), aff'd, 57 F. App'x 27 (2d Cir. 2003).

Furthermore, although plaintiff appears to allege that he was suspended without pay for eight weeks in June 2015, plaintiff was not actually suspended because he challenged DOL's determination.  See Siudzinski Decl. Ex. B.  Plaintiff's allegations that he was discriminated against by being medically examined to determine fitness for work are not, without more, adverse actions.  See Baum v. Rockland County, 161 F. App'x 62, 64 (2d Cir. 2005), but see O'Toole v. Ulster County, 2014 WL 4900776, at *10 (N.D.N.Y. Sep. 30, 2014).  However, taking plaintiff's own admissions concerning his time and attendance, the findings of this Court in plaintiff's first federal action, and hearing officer's finding and related documents, there is no genuine dispute as to whether plaintiff's medical examinations and leave of absence were

18

discriminatory or retaliatory.  See Belton v. City of New York, 2014 WL 4798919, at *7

(S.D.N.Y.  Sep. 26, 2014), aff'd Belton v. City of New York, 629 F. App'x. 50 (2d Cir. 2015).

DOL, however, has legitimate, non-discriminatory reasons for the exams, namely plaintiff's

excessive tardiness and absences, which plaintiff claims are due to his disability.  As

demonstrated above, plaintiff's claims concerning his medical examinations and involuntary

leave of absence are precluded by the hearing officer's finding from the § 72 hearing.  See,

supra, Section II.  Accordingly, plaintiff has failed to allege that DOL's action concerning his

employment are materially adverse under the law to constitute discrimination and should be

dismissed.

**C.      Plaintiff has Failed to Plead a Retaliation Claim**

A party asserting a retaliation claim under the RA must show that (1) he engaged in

activity protected by the RA; (2) the employer was aware of the plaintiff's protected activity; (3)

the employer took an adverse employment action against the plaintiff; and (4) there was a causal

connection between the protected activity and the adverse employment action.  See Sarnov v.

Douglas Elliman-Gibbons and Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999).

Plaintiff alleges that the same acts that were discriminatory were also in retaliation for

exercising his rights.  Plaintiff does not identify which of his complaints allegedly triggered

DOL's retaliatory acts.  For purposes of this motion we can assume that plaintiff's request for a

reasonable accommodation on November 12, 2014 and his four DHR and EEOC complaints on

June 8, September 14, September 16, and November 15, 2015 are the protected activities to

which he is attempting to reference.

First, DOL's seven disciplinary write-ups of plaintiff in June to August 2014 predate each

of the protected activities identified above.  In any event disciplinary memos are not adverse

actions for purposes of retaliations claims.  See Tepperwein v. Entergy Nuclear Operations, Inc.,

663 F.3d 556, 570 (2d Cir. 2011); Ulrich v. Moody's Corp., 2014 WL 4977562, at *13 (S.D.N.Y.

Sep. 30, 2014).  Accordingly, DOL's later write-ups on November 19, 2014, December 31, 2014,

and January 29, 2015 are also not adverse actions.

Second, plaintiff's allegation that he was suspended for eight weeks fails as a claim of

retaliation.  As mentioned above, the June 12, 2015 Notice of Discipline was never pursued

because plaintiff challenged it.  Plaintiff does not allege, nor is there any evidence, that DOL was

aware of plaintiff's June 8, 2015 DHR complaint before it issued the Notice four days later.

Furthermore, courts within this Circuit have found that unrealized threats of discipline are not

actionable.  See Bowles v. New York City Transit Authority, 2006 WL 1418602, at *10 (S.D.N.Y.

May 23, 2006); see also Weeks v. N.Y.S. Div. of Parole, 273 F.3d 76, 86 (2d Cir. 2001) (notice

of discipline and counseling memorandum are insufficient to constitute an adverse employment

action for purposes of a prima facie retaliation case).  In any event, the DOL administrative

actions concerning plaintiff's employment issues have dissuaded plaintiff from continuing to file

complaints and to pursue his federal actions.  See Tepperwein, 663 F.3d at 572.

Lastly, plaintiff's medical examinations and involuntary leave of absence were not

retaliatory because DOL has already demonstrated it had legitimate, non-discriminatory reasons

for its actions.  See, supra, Section II.  Additionally, the first medical examination by Dr. Kurtz

took place on September 9, 2015, three months after plaintiff's June 8, 2015 complaint to DHR

and five days before plaintiff's next complaint to the EEOC on September 14, 2015.  The second

medical examination by Dr. Wapner, on September 21, 2015, was at Dr. Kurtz' referral, and

plaintiff's October 7, 2015 placement on involuntary leave was at the recommendation of Dr.

Wapner, an employee of EHS, not DOL.  Three months is typically found insufficient to

establish a direct causal connection.  See Altieri v. Albany Pub. Library, 172 Fed. App'x 331, 333 (2d Cir. 2006); McCoy v. State, 16 Misc. 3d 1128(A), at *5-6 (Ct. Cl. 2007) (noting the line of cases that hold that time periods ranging from three months to two years are too long to establish a causal connection).  Similarly, plaintiff has failed to make any allegations that would create an inference of discriminatory intent to establish an indirect causal connection.  See Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000).  Plaintiff's allegations that DOL discriminated and retaliated against him should be dismissed for failure to state a claim.

## **CONCLUSION**

For all of the foregoing reasons the State Defendant's motion to dismiss the complaint should be granted.

Dated: New York, New York
      February 8, 2017

                    Respectfully submitted,

                    ERIC T. SCHNEIDERMAN
                    Attorney General of the
                     State of New York
                    Attorney for State Defendant

                    By:_____/s/_____
                    MICHAEL SIUDZINSKI
                    Assistant Attorney General
                    120 Broadway, 24th Floor
                    New York, New York 10271
                    (212) 416-8552

MICHAEL SIUDZINSKI
Assistant Attorney General
Of Counsel