UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MOHAMMED QUADIR,

                            Plaintiff,

                 -v-

NYS DEPARTMENT OF LABOR,

                            Defendant.

16-CV-7476 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Mohammed Quadir brings this *pro se* suit against his former employer, the New York State Department of Labor ("DOL"). Quadir alleges that the DOL did not reasonably accommodate his disability, discriminated against him based on his disability, and retaliated against him for filing a previous lawsuit. The DOL moves to dismiss. For the reasons that follow, the motion is granted in part and denied in part.

I.     **Background**

Quadir joined the DOL in April of 2008. His job involved conducting interviews with unemployment benefit recipients. Quadir also taught workshops on resume writing and other job-market skills.

This is the second of three lawsuits filed by Quadir—one each in 2013, 2016, and 2017. *Quadir I* covers DOL actions before May 30, 2014; *Quadir II* covers DOL actions between June 8, 2014, and November 6, 2015; *Quadir III* covers DOL actions after that. *See Quadir v. New York State Dep't of Labor*, No. 13 Civ. 3327 (S.D.N.Y. 2013) ("*Quadir I*"); *Quadir v. New York State Dep't of Labor*, No. 17 Civ. 5177 (S.D.N.Y. 2017) ("*Quadir III*").

### A. Quadir I

Beginning in 2010, Quadir asked for—and received—several exemptions from the DOL, excusing him from having to teach workshops. These exemptions were based on Quadir's complaints of fatigue, headaches, and similar symptoms resulting from major depressive disorder. In 2012, however, the DOL denied his request to continue the exemption. As an alternative accommodation, it offered him the use of a high chair and lectern while teaching. Quadir's supervisor told him that any further failure to teach workshops would be considered insubordination.

In 2013, Quadir filed *Quadir I*, alleging that the DOL failed to reasonably accommodate his disability and took adverse action against him because of that disability. Later, when Quadir was given a negative annual performance evaluation, he added a retaliation claim.

#### 1. Motion to Dismiss

The Court granted the DOL's motion to dismiss all claims asserted under the Americans with Disabilities Act ("ADA"), New York State law, and New York City law, holding that they were barred by sovereign immunity. *Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 536–37 (S.D.N.Y. 2014). Instead, the Court construed the complaint as stating a claim under the Rehabilitation Act of 1973, 29 U.S.C. § 794, which requires states to waive sovereign immunity in order to receive federal funds. Since New York accepted federal funds, the Court held that it was subject to suit based on the Rehabilitation Act. *Id.*

As to the substance of Quadir's claims, the Court denied the motion to dismiss. On the retaliation claim, the Court held that Quadir adequately alleged that the DOL had notice of Quadir's disability. On the discrimination and retaliation claims, the Court held that Quadir adequately alleged that his negative employee evaluations constituted adverse employment actions.

### 2. Summary Judgment

Two years later, in 2016, the Court granted summary judgment to the DOL. *See Quadir v. New York State Dep't of Labor*, No. 13 Civ. 3327, 2016 WL 3633406 (S.D.N.Y. June 29, 2016). First, the Court held that Quadir had provided the DOL only with information supporting a medical need to avoid prolonged standing and physical exertion, and that the DOL had accommodated those needs by providing him with a high chair for use when teaching workshops. *Id.* at *2–4. As Quadir had failed to offer evidence showing a medical need for a total exemption from teaching workshops, the Court granted summary judgment to the DOL on the accommodation claim. *Id.*

Second, the Court granted summary judgment on the discrimination claim because Quadir had not adduced evidence that he suffered an adverse employment action. *Id.* at *5–6. Specifically, the Court noted that counseling memos, negative annual evaluations, denial of leave time, and placement on "full restrictions" did not rise to the level of an adverse employment action under the Rehabilitation Act. *Id.*

Third, the Court granted summary judgment on the retaliation claim. *Id.* at *6–7. The Court again held that there was no adverse employment action and, additionally, that the DOL had adduced evidence that there were legitimate nondiscriminatory reasons for disciplining Quadir based on his tardiness. *Id.*

### 3. Appeal

Quadir appealed the summary judgment ruling to the Second Circuit, which summarily affirmed. *See Quadir v. New York State Dep't of Labor*, No. 16-2617, 2017 WL 2399584 (2d Cir. June 2, 2017). The court held that Quadir's disability was reasonably accommodated by the DOL. *Id.* at *1. The court also held that Quadir did not suffer a materially adverse employment

action, and that, in any event, the DOL had legitimate non-pretextual reasons for the steps it took. *Id.* at *2.

### B. Quadir II

In *Quadir I*, the Court set May 30, 2014, as the cut-off date for claims to be governed in that suit. (*Quadir I* Dkt. No. 37.) The Court noted that "[a]fter this suit runs its course, [Quadir] is free to file a new complaint alleging any wrongdoing after May 30, 2014." (*Id.* at 2.) Quadir did just that.

The current suit, filed in September of 2016, covers "discriminatory and retaliatory acts" that took place between June 8, 2014, and November 6, 2015. (Dkt. No. 2 at 2.) It alleges failure to accommodate a disability, discrimination based on a disability, and retaliation. (Dkt. No. 2 at 2–3.) The Complaint incorporates the allegations contained in four separate administrative complaints filed by Quadir, and the Court construes them as being part of the Complaint.

The Complaint alleges that Quadir suffers from major depressive disorder. (Dkt. No. 2 at 3.) It also alleges the following actions by the DOL:

- Denial of a reasonable-accommodation request in November of 2014, when Quadir asked to be allowed to come to work 30–45 minutes late in the mornings. (Dkt. No. 2-1 at 2.)

- Seven disciplinary write-ups between June 1, 2014, and August 31, 2014: two for poor time and attendance; two for poor work performance; two for insubordination; and one for excessive emails. (Dkt. No. 2 at 9, 37–38.)

- An incident in which a supervisor berated him for making untrue claims about her in *Quadir I*. (Dkt. No. 2 at 12.)

- General harassment at his workplace due to his disability and for suing the DOL. (*E.g.* Dkt No. 2-2 at 7–11.)

- A negative annual evaluation in April of 2015, which denied him a pay raise. (Dkt. No. 2-1 at 4.)

4

- An eight-week medical suspension without pay in June of 2015. (Dkt. No. 2-1 at 4.) This suspension never took effect because Quadir appealed it administratively. (Dkt. No. 20 at 10.)

- An involuntary and indefinite medical suspension in October of 2015, following medical evaluations. (Dkt. No. 2-1 at 4–5, 20.) Quadir claims the medical evaluations were pretextual.

Quadir alleges that the DOL's refusal to allow him to come in late to work constituted failure to accommodate; that these actions constituted discrimination on the basis of his illness; and that these actions were in retaliation for filing *Quadir I*. (Dkt. No. 2 at 10; Dkt. No. 2-1 at 4.) When he filed this suit, Quadir was still on forced medical suspension. (Dkt. No. 2 at 3.) At present, however, his employment has been terminated, which is the subject of *Quadir III*.

The DOL filed this motion to dismiss on February 8, 2017. (Dkt. No. 11.) It argues that *Quadir II* is precluded by *Quadir I*; that *Quadir II* is precluded by an administrative hearing that took place before this suit was filed; and that Quadir fails to state a claim. (*See* Dkt. No. 13.)

### C. Quadir III

The complaint in *Quadir III* was filed on July 7, 2017. (*Quadir III*, Dkt. No. 2.) It alleges discrimination and retaliation based on Quadir's termination from his job with the DOL. In an order dated July 31, 2017, the court dismissed any claims not based on the Rehabilitation Act, as it had done in *Quadir I*. (*Quadir III*, Dkt. No. 6.)

## II. Legal Standard

To survive a motion to dismiss for failure to state a claim, plaintiffs must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when plaintiffs plead facts that would allow "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Courts must accept as true all well-pleaded factual allegations in the complaint, and 'draw [ ] all inferences in the plaintiff's favor.'" *Goonan v.*

*Fed. Reserve Bank of New York*, 916 F. Supp. 2d 470, 478 (S.D.N.Y. 2013) (quoting *Allaire Corp. v. Okumus,* 433 F.3d 248, 249–50 (2d Cir. 2006)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts must afford *pro se* plaintiffs "special solicitude" before granting motions to dismiss or motions for summary judgment. *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "This policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotations and modifications omitted). Therefore, courts read *pro se* filings "to raise the strongest arguments that they *suggest*." *Id.* at 474 (emphasis in original).

## III. Discussion

### A. Sovereign Immunity

For the reasons discussed in *Quadir I*, any claims against the DOL under the ADA, New York State law, or New York City law are barred by the Eleventh Amendment and dismissed on immunity grounds. *See Quadir*, 39 F. Supp. 3d at 536–37. Instead, as in *Quadir I*, the Court construes the Complaint as alleging violations of the Rehabilitation Act, for which New York has waived sovereign immunity. *Id.*

6

B.     Preclusion

The DOL argues that Quadir's claims are precluded by the Court's summary judgment ruling in *Quadir I*. It also argues that Quadir's claims are precluded by the findings of the hearing officer in Quadir's administrative appeal of his medical suspension. Neither argument prevails.

Claim preclusion plainly does not apply here. Under the doctrine of claim preclusion, "[a] final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) (quoting *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (alterations in original)); *see also Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000) ("[claim preclusion] does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit"). Because the Court expressly excluded from *Quadir I* the claims brought in *Quadir II*, those claims are not precluded.

Issue preclusion does not bar this suit either. Issue preclusion "applies not to claims or to causes of action as a whole but rather to issues." *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013). Issue preclusion applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Id.*

The DOL, however, seeks to preclude the entire suit based on *factual* conclusions in *Quadir I*'s summary judgment ruling. Those issues are not identical to the issues raised in *Quadir II*. That suit was about Quadir's request to be exempt from teaching workshops; this one is about his request to show up late in the mornings. That suit was about alleged discrimination and retaliation taking place between 2012 and 2014; this one is about alleged discrimination and

retaliation between 2014 and 2015. Just because that claim failed does not mean this one automatically fails too.

Nor is this case precluded by the findings of the administrative hearing that was held pursuant to New York State Civil Service Law § 72. The DOL does not differentiate between claim preclusion and issue preclusion, but it presumably seeks to apply the latter. However, the DOL does not cite a single case in which a court granted preclusive effect to a Section 72 hearing, and the Court is not aware of any such cases. In the only relevant case cited by the DOL, the parties did not actually contest the issue of whether the administrative hearing is entitled to preclusive effect. *See Page v. Liberty Cent. Sch. Dist.*, 679 F. Supp. 2d 448, 452 (S.D.N.Y. 2010). While the hearing officer's conclusions may prove to be helpful evidence for the DOL, they are not a basis for outright dismissal at this stage. *See Seabrook v. New York City Health & Hosps. Corp.*, No. 13 Civ. 4164, 2015 WL 273652, at *7 (S.D.N.Y. Jan. 20, 2015).

### C. Reasonable Accommodation

Quadir alleges that he suffers from major depressive disorder, which gives him trouble in the mornings. (Dkt. No. 2 at 3.) When he asked his supervisor to be allowed to come to work 30–45 minutes late in the mornings, his supervisor denied the request. (Dkt. No. 2-1 at 2.)

Reasonable accommodation claims under the Rehabilitation Act are generally analyzed under the same standard as ADA claims. *Quadir*, 39 F. Supp. 3d at 538. There are four elements: "(1) plaintiff is a person with a disability under the meaning of the [Rehabilitation Act]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004).

The DOL argues that Quadir did not provide medical documentation to support his request and did not make the request with the appropriate department. (Dkt. No. 13 at 16.) Presumably, these arguments go to the notice element. The DOL also argues that Quadir's requested accommodation would have negated an essential function of his job. (*Id.*)

However, for essentially the same reasons as in *Quadir I*, the Court concludes that dismissal is inappropriate at this stage. "[D]ismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008). "[T]he determination of whether a particular modification is 'reasonable' involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it." *Staron v. McDonald's Corp.*, 51 F.3d 353, 356 (2d Cir. 1995). Thus, the reasonableness of any proposed accommodation is generally a fact question to be investigated through discovery.

The Complaint also adequately pleads notice. The DOL was aware of Quadir's depression, and Quadir had asked his supervisor that he be allowed to show up late in the mornings to accommodate this disability. "At the very least . . . an employee who proposes an accommodation . . . triggers a responsibility on the employer's part to investigate that request and determine its feasibility." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000). Construed liberally in his favor and taken as true, Quadir's allegations raise a plausible inference that the DOL was on notice of his need to arrive late for work in the mornings due to his disability.

### D.     Discrimination

Because discrimination is rarely so open as to provide direct proof, a plaintiff is required only to provide four circumstantial elements to make out a *prima facie* Rehabilitation Act

9

discrimination claim: "(1) plaintiff's employer is subject to the [Rehabilitation Act]; (2) plaintiff was disabled within the meaning of the [Rehabilitation Act]; (3) plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of her disability." *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004) (citation and brackets omitted).

The DOL first argues that Quadir was not otherwise qualified to do his job because showing up on time is an essential component of his job. But this is a fact-intensive issue not to be decided at the motion-to-dismiss stage. The cases cited by the DOL illustrate this point: one was decided on summary judgment, the other after a bench trial. *See Davis v. Bowes*, No. 95 Civ. 4765, 1997 WL 655935, at *1 (S.D.N.Y. Oct. 20, 1997); *Guice-Mills v. Derwinski*, 772 F. Supp. 188, 190 (S.D.N.Y. 1991).

The DOL next argues that Quadir did not suffer an adverse employment action. "An adverse employment action involves some employer act or omission that constitutes or causes a material change in terms and conditions of employment." *Quadir*, 39 F. Supp. 3d at 541. To be materially adverse, the relevant change in conditions of employment "must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities . . . ." *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (citation and quotation marks omitted).

As in *Quadir I*, the Court concludes that, when read with the requisite flexibility accorded to *pro se* pleadings, the Complaint adequately alleges that Quadir suffered one or more adverse employment actions. Specifically, these include the negative employment evaluation that denied

10

Quadir an automatic pay raise, and the involuntary suspension without pay. *See Pompey-Howard v. New York State Educ. Dep't*, No. 115 Civ. 1296, 2017 WL 3242260, at *7 (N.D.N.Y. July 28, 2017). The DOL argues that these actions were justified by non-discriminatory reasons, but those arguments are properly addressed on summary judgment.

E. **Retaliation**

To make out a case for retaliation, a plaintiff must show that "(1) she engaged in an activity protected by the [Rehabilitation Act]; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity," that is, the employer acted with a retaliatory motive. *Caskey v. Cnty. Of Ontario*, 560 F. App'x 57 (2d Cir. 2014) (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)) (brackets omitted).

The DOL first argues that Quadir was not engaged in protected activity. It concedes that *filing* a lawsuit is a protected activity, but argues that *litigating* that lawsuit is not. (Dkt. No. 24 at 8.) And since *Quadir I* was filed in 2013, the DOL argues, it lacks a causal connection to adverse actions taken in 2014 or 2015. But the Court is unconvinced. If filing a discrimination is a protected activity—and it is—it makes little sense to differentiate between filing that suit and actively litigating it. *See also Dimino v. HSBC Bank, USA N.A.*, No. 11 Civ. 4189, 2012 WL 1202035, at *4 (S.D.N.Y. Apr. 11, 2012) ("Filing a gender[]discrimination suit is clearly a protected activity . . . .").

The DOL next argues that there was no adverse employment action. (Dkt. No. 13 at 20.) However, the standard for an adverse employment action in a retaliation claim is even easier to meet than a discrimination claim. In the retaliation context, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a

11

charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted); *see also Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 146 n.6 (2d Cir. 2002) ("Apart from [two differences], the reach and requirements of [the ADA and the Rehabilitation Act] are precisely the same."). "A plaintiff's burden at this prima facie stage is de minimis." *Treglia*, 313 F.3d at 719. For the reasons discussed with respect to the discrimination claim, Quadir has adequately pleaded that he was subject to an adverse employment action.

The Court reiterates its admonition in *Quadir I* that "the denial of a motion to dismiss a *pro se* complaint expresses no opinion regarding the merits of [Quadir]'s claim." *Quadir*, 39 F. Supp. 3d at 540 (citation omitted). As in *Quadir I*, "[s]ummary judgment may well show that the [DOL] was undisputedly correct in its assessment of Quadir's performance and justified in [taking the challenged actions]." *Id.* at 542. For now, however, outright dismissal is not appropriate.

## IV. Conclusion

For the foregoing reasons, the DOL's motion to dismiss is GRANTED in part and DENIED in part. Quadir's claims under the ADA, New York State law, and New York City law are dismissed on the basis of sovereign immunity. The DOL's motion is denied as to Quadir's reasonable accommodation, discrimination, and retaliation claims, which are construed as claims under the Rehabilitation Act. The DOL shall file an answer within fourteen days from the date of this opinion.

The Clerk of Court is directed to close the motion at Docket Number 11.

SO ORDERED.

Dated: September 19, 2017
      New York, New York

_____
J. PAUL OETKEN
United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*